UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BEVERLY TOWNE AND JERRY TOWNE,

       Plaintiffs,

  v.

SHASTA COUNTY, SHASTA COUNTY DEPARTMENT OF SOCIAL SERVICES, a Public Entity, and DOES 1 to 50, inclusive,

       Defendants.

NO. CIV. 05-1533 WBS CMK

MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT

----oo0oo----

       Plaintiffs Beverly Towne and Jerry Towne allege that defendants violated their rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Unruh Civil Rights Act, California Civil Code §§ 51 and 51.5, and the Federal Rehabilitation Act, 29 U.S.C. § 794. (Compl.)  Pursuant to Federal Rule of Civil Procedure 56(c), defendants Shasta County and Shasta County Department of Social Services now move for summary judgment, maintaining that plaintiffs cannot establish differential treatment on the basis of their disabilities.

1

I.   Factual Background

Plaintiff Beverly Towne has a congenital disability that affected the formation of her arms and hands. (Defs.' Statement of Undisputed Facts ("Defs.' SUF") No. 1.)  She is married to and lives with Jerry Towne. (Id. Nos. 1, 21.) Jerry Towne has a disability by virtue of having undergone lower limb amputation. (Id. No. 1.)  Plaintiffs live in a two-bedroom home and they share one of the two bedrooms. (Id. No. 21.)  Beverly Towne has a daughter, Theresa Edenstrom, who has three children of her own. (Id. No. 2.)

On August 31, 2004, Theresa's children were removed from her care by a state agency. (Id. No. 3.)  Wendy Dickens is a social worker employed by the Shasta County Department of Social Services, and she was assigned to this case until approximately December 2004 or January 2005. (Monique Grandaw Decl. Ex. G (Wendy Dickens Dep. 23:11-12).)  Initially, Beverly Towne informed Dickens that she did not want the children placed with her. (Defs.' SUF No. 4.)  However, Beverly Towne changed her mind, called Dickens back, and indicated that she did want to have her grandchildren placed in her home. (Id. No. 5.)

The Department of Social Services evaluates candidates for placement of foster children by asking the candidates to submit an application and be fingerprinted, and then using the fingerprints to obtain the candidate's criminal history report. (Id. No. 7.)  Fingerprinting is used to verify the candidate's criminal history and to obtain Federal Bureau of Investigation ("FBI"), Department of Justice ("DOJ"), and Child Abuse Index reports. (Id. No. 12.)  Additionally, an informal interview

2

process occurs while the candidate's application is pending. (Id. No. 8.)  Often, the caseworker conducts a home study, conducts a psychological interview of the candidate or candidates, and gets references from neighbors, friends, and employers.  (Grandaw Decl. Ex. L (Doris Sami Dep. at 21:3-20).) There is no clear order in which these steps must be conducted, but because a candidate's significant criminal history may be dispositive of the application, it is generally more efficient to obtain fingerprints and the criminal history before taking other steps.  (Id. at 21:3-8.)  Moreover, a home study is not conducted until the criminal history reports are obtained.  (Defs.' SUF No. 17.)  The requirements assessed by social workers include that for two children of the same gender to be placed in a foster home, there must be at least one bedroom set aside for their use. (Defs.' SUF No. 21.)

        Dickens sent plaintiffs an application for placement of children with relatives, which they received, completed, and then submitted to the agency.  (Id. No. 6.)  After submitting their application for child custody, plaintiffs were asked to go to the Department of Social Services for fingerprinting.  (Id. No. 11.) However, because of her disability, Beverly Towne could not be fingerprinted on the Department's LiveScan machine.  (Id.) Dickens informed plaintiffs that there were alternative ways of acquiring the necessary reports without obtaining Beverly Towne's fingerprints, and said that she would contact the County's

attorneys to investigate these alternative approaches.[1]  (Id. No. 14.)  Until a candidate is fingerprinted and the additional agency reports (e.g., FBI and DOJ reports) are obtained, a home study cannot be conducted and placement of a child in the candidate's home cannot occur.  (Defs.' SUF No. 17.)

The social worker assigned to plaintiffs' case had certain concerns that she expressed to plaintiffs.  She was concerned that for a certain period of time, plaintiff's son, Ritchie, lived in the second bedroom of their home.  (Id. No. 21.)  While Ritchie Towne lived in the home, there was not a bedroom that could be used for plaintiffs' two granddaughters.  (Id.)  Additionally, Child Protective Services had previously removed Ritchie Towne's children from his care.  (Id.)  Ritchie had also been involved in an incident with Theresa's youngest child, in which he had placed some sort of physical restraint on the child (either tape or rope), and injured the child in the process of cutting the restraints off of him.  (Jason K. Singleton Decl. Ex. G (Brenda Becker Dep. 24:1-5).)  However, Ritchie Towne eventually moved out of plaintiffs' home, and they informed the agency of that fact.  (Grandaw Decl. Ex. H (Bonnie Rightmier Dep. 21: 13-14).)

Additionally, Dickens informed plaintiffs that the grandchildren needed to be protected from their mother and to

---

[1] Plaintiffs now dispute whether such an alternative procedure exists, given that (1) no such procedure was undertaken in this case, (2) the last social worker to work on this case did not know about an alternative procedure, and (3) California state law requires that fingerprints be obtained.  (Pls.' Opp'n to Mot. for Summ. J. 5.)  It does not appear that Dickens was aware of what the process involved, other than that it involved additional paperwork.  (See Grandaw Decl. Ex. G (Dickens Dep. 22-23).)

4

have limited contact with her. (Defs.' SUF No. 22.) Yet, because Beverly Towne had informed Dickens that Theresa was living there at a previous point in time, and Theresa had answered the phone at the residence when Dickens called, Dickens believed that Theresa was living at the plaintiffs' residence. (Id.) The Department of Social Services was also aware of the fact that Theresa did not want her children to live with her parents, had informed Dickens that Beverly Towne was "manipulative and aggressive," and had stated that she "did not have a childhood" because she had to care for her mother. (Defs.' SUF 26.) Dickens indicated that she had observed Beverly Towne exhibit aggressive behavior in a manner that lent credibility to Theresa's statements. (Grandaw Decl. Ex. G (Dickens Dep. 76-78.) However, Dickens also indicated that she was aware that Theresa had mental health problems. (Id.)

The Department of Social Services also noted in this case that when the children lived with their mother, a non-relative, Larry Rowten, also lived there and shared a bed with one of the young girls.[2] (Grandaw Decl. Ex. H (Rightmier Dep. 35).) Rowten was also Beverly Towne's care provider, and although it is not clear whether Rowten lived with plaintiffs, the social workers believed that this could result in more contact with the girls. (Id. at 36.) Based on these concerns, Dickens summarized her position as follows: "[i]n this case, it was determined that due to non-protection issues, placement would not be made with the Townes, so it was not necessary to complete

---

[2] Larry Rowten's last name appears to be misspelled as "Routon" in Rightmier's deposition transcript.

5

the rest of the process." (Id. at 25:14-17.)

In December 2004 or January 2005, plaintiffs were still being considered as potential foster parents, and Dickens passed the responsibility for their file to another social worker, Bonnie Rightmier. (Id. at 23:11-12, 24:5-8; Grandaw Decl. Ex. H (Bonnie Rightmier Dep. 13:10-17).) Around this time, the grandchildren were in foster care placement. (Defs.' SUF No. 33.) Although defendants indicate that the children were doing well and were stabilized, plaintiffs disagree and note that the children had been caught stealing from their foster parents and other schoolchildren. (Compare Grandaw Decl. Ex. H (Rightmier Dep. 17:6-8); with Jason K. Singleton Decl. Ex. J (Shasta County Dept. of Social Servs. Notes).)

Rightmier discussed the issue of fingerprinting with plaintiffs and informed them that she had personal knowledge of the alternative procedure for obtaining information. Rightmier explained that she knew that fingerprinting was not necessary because "I myself did not give fingerprints and the department had to go outside and do a paper trial [sic] on me . . . ." (Grandaw Decl. Ex. H (Rightmier Dep. 19:19-22).) She also informed plaintiffs that the primary issue was their "failure to protect" the children. (Id. at 34:15-16.) She suggested that plaintiffs apply for a temporary restraining order against their daughter. (Id. at 20:19-20.)

Beverly Towne subsequently informed county officials that Theresa had moved out of the residence, and that she was willing to "do whatever it took" to obtain custody of her grandchildren, including obtaining a restraining order against

6

1  her daughter to alleviate any concerns.  (Grandaw Decl. Ex. J
2  (Beverly Towne Decl. 29-31).)
3          On April 25, 2005, the state court adjudicating custody
4  proceedings ordered the Department of Social Services to reassess
5  the grandparents for potential placement in light of the fact
6  that no fingerprints had been obtained.  (Singleton Decl. Ex. B
7  (Six Month Review by State Court) ("Attorney Richard Bay requests
8  that the Court order the Department to reassess the grandparents
9  home for placement.  Mr. Bay advises the Court that the
10 grandmother has a birth defect, which makes it difficult to
11 fingerprint.  The Court **grants** the request.").)
12         Although Rightmier did not submit any subsequent
13 reports to the court (Grandaw Decl. Ex. H (Rightmier Dep. 44:12-
14 18)), it appears that another case worker filed an interim review
15 report.  (Defs.' Request to Take Judicial Notice Ex. D (May 6,
16 2005 Interim Review Report).)  In this report, the social worker
17 indicated that plaintiffs had demonstrated an inability to
18 protect their grandchildren, and that the mother of the children
19 did not want them to stay with plaintiffs.  (Id. at 3.)
20 Additionally, the social worker noted that plaintiffs failed to
21 have Larry Rowton call a social worker to discuss why he should
22 not visit the children.  (Id.)  At a hearing on May 9, 2006, the
23 state court ordered that the grandchildren remain in their
24 current placement, and not be placed with their maternal
25 grandmother.  (Id. Ex. F (May 9, 2005 Court Order).)  The state
26 court noted that plaintiffs' son, Ritchie, was no longer living
27 with plaintiffs, but was particularly persuaded to leave the
28 children where they were by the fact that the children "were very

7

happy in their current placement." (Id. at 5, 7.)

In approximately July, 2005, Rightmier turned over the responsibility for plaintiffs' file to Brenda Becker, another social worker in the department. (Grandaw Decl. Ex. H (Rightmier Dep. 44-45)); (Singleton Decl. Ex. G (Brenda Becker Dep. 24).) Becker indicated that, upon receiving a call from plaintiffs asking about fingerprinting, she asked them whether anything had changed with regard to the other issues that social workers had previously noticed. (Id. 24:18-25.) She asked whether plaintiffs had obtained a temporary restraining order, whether they had adequate housing for the children, and whether their son, Ritchie, would have access to the children in their home. (Id.) Becker stated that plaintiffs informed her that nothing had changed, which made the inability to fingerprint Beverly Towne a non-issue. (Id. at 25: 1-3.) Becker further explained, "if the home isn't going to pass, then there's no sense in fingerprinting." (Id.)

II. Discussion

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

8

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.[3] Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  Id. Any inferences drawn from the underlying facts must, however, be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

With regard to the substance of plaintiffs' claims, title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. Additionally, pursuant to the Federal Rehabilitation Act, "[n]o

---

[3] Defendants request that the court take judicial notice of court records of the Superior Court of the State of California in and for the County of Shasta in proceedings related to the custody of plaintiffs' grandchildren.  "Federal courts may 'take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'"  Cactus Corner, LLC v. U.S. Dept. of Agric., 346 F. Supp. 2d 1075, 1092 (E.D. Cal. 2004) (quoting United States ex rel Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992)). Accordingly, the court takes judicial notice of the court records submitted by defendants--a status review report filed April 19, 2005, a court order entered April 25, 2005, a transcript of court proceedings of April 25, 2005, an interim review report filed May 6, 2005, a court order entered May 9, 2005, and a transcript of the court proceedings of May 9, 2005.

9

1  otherwise qualified individual with a disability . . . shall,
2  solely by reason of her or his disability, be excluded from the
3  participation in, be denied the benefits of, or be subjected to
4  discrimination under any program or activity receiving Federal
5  financial assistance . . . ."  29 U.S.C. § 794.

6        Thus, both code sections cited by plaintiffs "prohibit
7  discrimination on the basis of disability."  Lovell v. Chandler,
8  303 F.3d 1039, 1052 (9th Cir. 2002).  The distinction between
9  these two statutes is that "[t]he ADA applies only to public
10 entities, whereas the [Rehabilitation Act] proscribes
11 discrimination in all federally-funded programs."  (Id.)
12 Summarizing the requirements of these two statutes, the Ninth
13 Circuit has explained that:

> To establish a violation of Title II of the
> ADA, a plaintiff must show that (1) she is a
> qualified individual with a disability; (2) she
> was excluded from participation in or otherwise
> discriminated against with regard to a public
> entity's services, programs, or activities[;]
> and (3) such exclusion or discrimination was by
> reason of her disability.  To establish a violation
> of § 504 of the [Rehabilitation Act ("RA")], a
> plaintiff must show that (1) she is handicapped
> within the meaning of the RA; (2) she is otherwise
> qualified for the benefit or services sought;
> (3) she was denied the benefit or services solely
> by reason of her handicap; and (4) the program
> providing the benefit or services receives federal
> financial assistance.

Lovell, 303 F.3d at 1052 (9th Cir. 2002) (citing Weinreich v.
L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir.
1997)).

       Additionally, when a state agency is considering
placing a child in the home of a relative, California Welfare and
Institutions Code § 361.4(b) requires that, "[w]henever a child

10

1  <u>may be</u> placed in the home of a relative . . . the court or county
2  social worker placing the child <u>shall cause</u> a state and federal
3  level criminal records check to be conducted . . . ." Such a
4  criminal records check occurs pursuant to a "fingerprint
5  clearance check of the relative." Cal. Welfare & Institutions
6  Code § 361.4(b). The statutory language specifies that a social
7  worker "shall ensure" that this fingerprint clearance check takes
8  place and "shall review" the results of the criminal records
9  check to determine whether the foster home is safe. <u>Id.</u>

10        Defendants contend that plaintiffs cannot establish
11 that they were denied due process solely because of their
12 disability. They argue that fingerprinting was one of several
13 steps to be completed before an application for the placement of
14 children in a foster home could be processed, and that plaintiffs
15 were unqualified for placement for several other reasons.
16 However, the provisions of the California Welfare and
17 Institutions Code cited above imply that defendants' duties were
18 obligations they had to fulfill before making a placement. This
19 in itself may create a reasonable inference that Beverly Towne's
20 disability was the determining factor in defendants' decision not
21 to place the children with her.

22        Further, there appear to be disputed issues of fact in
23 relation to the other reasons defendants contend they decided not
24 to place the children with plaintiffs. Specifically, defendants
25 cite the following reasons for their decision: (1) Theresa, the
26 mother of the children, resided with plaintiffs as recently as
27 June of 2005, and plaintiffs did not sufficiently assure county
28 officials that they would protect the grandchildren from their

11

1 mother; (2) Ritchie Towne resided in plaintiffs' home at various
2 points and presented some danger to the grandchildren; (3) the
3 fact that Larry Rowton resided in plaintiffs' home at a certain
4 point was problematic, given his previous contact with the
5 granddaughters; and (4) there was insufficient room in the home
6 for the grandchildren because there were only two bedrooms, and
7 both Ritchie Towne and Larry Rowton may have occupied the second
8 bedroom at different times.
9      Plaintiffs dispute all of these factual conclusions,
10 and defendants never conducted a home study of plaintiffs'
11 residence to independently verify whether these things were true.
12 More specifically, Beverly Towne testified in her deposition that
13 Theresa was not living in their home at all relevant times, and
14 that she was willing to obtain a temporary restraining order to
15 protect the children from their mother.  Additionally, defendants
16 had independently verified the fact that Theresa did not live
17 permanently in the residence.  Although Ritchie Towne lived in
18 the home for some time, he subsequently moved out.  There is no
19 clear indication that Larry Rowton resided in plaintiffs' home at
20 any time.  Finally, because plaintiffs sought to have their two
21 granddaughters live with them (and not their grandson, who had
22 been placed with his paternal grandmother), the fact that they
23 had a two-bedroom home meant that the extra bedroom was
24 sufficient space for the granddaughters.
25      Based on the foregoing, there appear to genuine issues
26 of material fact as to whether the inability to obtain
27 fingerprints, and thus Beverly Towne's disability, played a part
28 in the decision of defendants as to placement of the children.

12

1  However, there is no evidence whatsoever that Jerry Towne's
2  disability contributed to any decision or conduct of the
3  defendants.  At oral argument, counsel for plaintiffs conceded
4  that Jerry Towne is not entitled to sue on the basis of Beverly
5  Towne's disability and that defendants would be entitled to
6  summary judgment as against Jerry Towne if he could not prove
7  discrimination based upon his own disability.  Defendants' motion
8  for summary judgment must therefore be granted as against
9  plaintiff Jerry Towne.
10              Defendants further argue that plaintiffs cannot
11 establish the intentional discrimination necessary in order to
12 obtain monetary damages under the ADA or the RA, and that
13 plaintiffs are not entitled to punitive damages, pursuant to the
14 guidance issued by the United States Supreme Court in <u>Barnes v.
15 Gorman</u>, 536 U.S. 181, 189 (2002).  In response, plaintiffs
16 voluntarily withdraw their claims for monetary damages and
17 punitive damages under these federal law provisions.  Thus, there
18 is no dispute on this point for the court to resolve.
19              IT IS THEREFORE ORDERED that defendants' motion for
20 summary judgment on all claims of plaintiff Jerry Towne be, and
21 the same hereby is, GRANTED.
22              IT IS FURTHER ORDERED that defendants' motion for
23 summary judgment be, and the same hereby is, GRANTED as to
24 plaintiff Beverly Towne's claims for monetary and punitive
25 damages under the Federal Rehabilitation Act, 29 U.S.C. § 794,
26 and the Americans with Disabilities Act, 42 U.S.C. § 12101 <u>et
27 seq.</u>
28

AND IT IS FURTHER ORDERED that, in all other respects, defendants' motion for summary judgment on the claims of plaintiff Beverly Towne be, and the same hereby is, DENIED.

DATED: October 31, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE